STANDARD OIL COMPANY v. POWELL PAVING & CON-
TRACTING COMPANY

(142 S. E., 612)

1. MUNICIPAL CORPORATIONS—DECREE REQUIRING MASTER TO DISTRIBUTE CITY'S PAYMENT ON PAVING CONTRACT TO MATERIALMEN HELD TO VEST OWNERSHIP OF FUNDS IN MATERIALMEN, AND THEY AND NOT CONTRACTOR'S SURETY MUST BEAR LOSS THEREOF.—Where decree of Circuit Court and report of Master, made part thereof, recited that city's payment of balance due bankrupt paving contractor should be distributed by Master to materialmen and other claimants whose claims were approved by Court and that Contractor's surety be required to pay any deficiencies, and denied surety's claim that such funds be paid to it, but granted surety the right to have funds first applied to claims of materialmen, *held*, that decree vested title to the funds, which were insufficient to pay in full claims of materialmen, in materialmen and not in surety, and

materialmen must, therefore, bear loss resulting from failure of bank in which funds were deposited by Master.

2. PROPERTY—TEST OF "OWNERSHIP" OF MONEY OR PROPERTY IS RIGHT TO DISPOSE THEREOF.—One of the tests of "ownership" of money or property is the right to dispose of, sell, convey, assign, or give it away.

Before WILSON, J., Sumter, August, 1927.    Reversed.

Action by the Standard Oil Company of New Jersey, on behalf of itself and other creditors, against the Powell Paving & Contracting Company, the American Surety Company, and others.    From an adverse judgment, defendant surety company appeals.

*Messrs. Herbert & Dial,* for appellant, cite: *In constru- ing a decree the intention of the Court must be ascertained:* 21 C. J., 689; 231 U. S., 259; 58 L. Ed., 209; 13 Minn., 498; 53 Atl., 771. *A decree is final if it has disposed of all of the issues and questions in the case, except those which are administrative in character:* 80 S. C., 289; 107 S. C., 456; 77 S. C., 112; Sec. 525 Code Proc. *Conclusiveness:* 21 C. J., 692; Id., 663; 32 S. C., 57. *The party upon whom the loss of a particular fund should fall depends upon the nature and purpose of the deposit:* 18 C. J., 772.

*Messrs. Harby, Nash & Hodges, Raymon Schwartz, Frierson & McCants, Melton & Belser,* and *M. W. Sea- brook,* for respondents.

March 22, 1928.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

This case has been before this Court once before, and the determination of the present appeal depends very much upon some of the adjudications formerly made.    The par- ties interested in the present litigation agreed that the record made up for the former appeal could be used in this hearing.    For the report of the first appeal, see 139 S. C.,

411; 138 S. E., 184. See, also, 140 S. C., 39; 138 S. E., 544.

To properly understand the matter now up for consideration, we relate, briefly, some of the history of the transactions leading up to the suit and some happenings during the pendency thereof.

Powell Paving & Contracting Company (hereafter called the paving company) had a contract for certain street paving with the City of Sumter (later referred to as the city), and the American Surety Company (termed by us the bonding company) was surety for the performance of the paving company's contract. The paving was completed, but the paving company went bankrupt, and was due materialmen and banks much more money than the sum of $22,-836.81 owing to it, by the city. The contract between the paving company and the bonding company contained an assignment from the former to the latter of all sums remaining unpaid by the city on the contract for the paving for the purpose of reimbursing the bonding company for any liabilities it might incur by reason of its breach.

The plaintiff here, for itself and other creditors of the paving company, instituted this action against the trustee in bankruptcy of the paving company, the city, the bonding company, and others, for the determination in one suit of all the conflicting claims between all the interested parties, and plaintiff procured an order, restraining the city from paying out the funds held by it, and forbidding the bringing of other suits by any party.

While there were several issues raised in the suit by various parties, the only one to be especially mentioned now was that between the materialmen (plaintiff) and the bonding company as to the liability of the latter for the claims of the former against the paving company for materials furnished in the performance of the paving contract.

The Master, to whom all questions of law and fact were referred, held that the bonding company was liable, under

its bond, for materials furnished to the paving company, and this holding was approved by his Honor, Judge Wilson, on exceptions heard by him to the Master's report. In almost all matters, and especially in those of any importance, the report of the Master was confirmed by Judge Wilson, and, except when modified, that report was made a part of the Court decree.

The bonding company and other defendants appealed from the decree on circuit, but the result was an affirmance thereof by this Court, in all respects.

After the reference was closed by the Master, at the instance of the city, and, apparently with the consent of all the parties, the Court passed an order permitting the city to deposit with the Master of Sumter County the money the city was due to the paving company, and the Master was directed to hold said sum "for this Court (the Court of Common Pleas) as a separate and distinct trust fund and so designated by the depository." By that order, the city was acquitted and discharged from all liability to the paving company, or any person claiming by that company on account of the city's contract with the paving company.

The Master, in pursuance of the terms of that order, deposited the funds received by him in two banks, placing the amount of $8,488.95 thereof in the People's Bank of Sumter.

The money received by the Master from the city being insufficient to pay in full the amounts of the several claims approved by the Court in favor of the materialmen, the Master, as required by the decree of Judge Wilson, called upon the bonding company for the difference between the sums of the city's payment and the allowed claims, and the bonding company promptly responded to the demand.

Pending the determination of the former appeal, the People's Bank of Sumter, one of the depositories selected by the Master, ceased doing business, and the funds deposited therein could not be obtained. It is conceded that there

will be a loss therein of around 50 per cent., unless it is finally held in the liquidation of the bank's affairs that the claim of the Master that the deposit made by him is a trust fund is correct. (This matter is not now before this Court.)

After this Court handed down its decision, affirming the decree of the Court of Common Pleas for Sumter County, the question arose as to who should bear the loss because of the failure to procure the deposit in the People's Bank of Sumter—the holders of the claims for material, or the bonding company. This question was submitted to Judge Wilson, who, by order, held that the loss must fall upon the bonding company. From that order, that defendant has appealed to this Court; and the sole question now before us is that which was last decided by the Circuit Judge.

Learned counsel for both the appellant and respondent conceded that the issue here raised is new to this Court, and, therefore, they point us to no former decision to aid in reaching a correct conclusion. But they assist us much by their unity in declaring that our decision must rest upon the proper construction of the intent and effect of the decree of Judge Wilson, of which decree the report of the Master is to be considered a part. So, we turn to the consideration of these instruments.

In the report of the Master, we find certain expressions, which, we think, bear upon the issue at hand. Speaking of the pleadings, that official says:

"Plaintiff demands judgment against the Powell Paving Company and bonding company for the amount of the claim *and distribution of the fund in its hand by the city.* * * * *"

That the answer of the city set up:

"That the city is merely a stakeholder of said sum; and *prays that proper distribution of the fund be made by order of the Court.*"

And the answer of the bonding company contained this:

"Denies that the bond makes it liable for material, but demands that, if it should be held liable, *then the fund should be paid over to the bonding company* to be by it applied to such claims."

As to the contract between the bonding company and the paving company, the Master held as follows:

"This was, and is, a complete assignment to the bonding company, in case of a breach of the contract, of all sums then remaining unpaid on the contract for the purpose of reimbursing the bonding company for any liabilities it might incur by reason of its breach.  *  *  *

"It was the right of the bonding company that all funds arising out of the contract should be first applied to the claims arising thereunder, so as to lessen claims against itself as insurer."

(Note.—We find some errors as to the report of the Master in the South Carolina Reports.  We take our quotations from the Southeastern Reporter.)*

After stating his conclusion that the bonding company was liable for materials, and in giving the Court the names of such creditors whose claims should be paid and the respective amounts due them, the Master declared as follows:

"I conclude as a matter of law that they are valid claims against the fund in the hands of the city and should share ratably therein, and that, *should there be insufficient funds to pay them in full, the bonding company should be required to pay any deficit."*  (Italics added.)

In his decree, the Circuit Judge affirmed what we have heretofore quoted from the Master.  In addition, his decree contained certain statements and provisions which must be considered here.  Referring to the funds paid over by the city to the Master, the Circuit Judge said this:

"This fund is now in the hands of the Master, subject to distribution under the order of this Court."

*NOTE: 139 S. C., 411, the 12th line from bottom, should read: "The bonding company could not claim any of the funds."

The decree provided:

"That, from the funds in his hands, the Master should pay certain costs and disbursements, and 'that the remainder of said fund the said Master do disburse to the claimants whose claims are approved; * * * that the said Master do with all convenient speed ascertain what sum, in addition to the fund on hand, is necessary to pay said claims in full, * * * and do immediately notify the defendant, American Surety Company, of said amount; that the defendant, American Surety Company, do forthwith, after such notice, pay unto the Master a sufficient sum to pay all of said claims; * * * that the said Master do promptly make and file with this Court a report of his acts and doings hereunder, which report shall show the amount of each claim, the amount paid to each claimant, such claimant's proportionate share of the attorney's fee, *and the amount due each claimant by the said American Surety Company,* and, if such amount has not been paid upon the coming in of said report, that each claimant have, and is hereby granted, leave, without further order of the Court, to enter judgment against the said American Surety Company *for the amount due by it to such claimant.'* "

There was at the time of the signing of the decree by the Circuit Judge certain questions reserved as to a fund of $5,832.97, claimed by the Trustee in Bankruptcy of Powell Fuel Company and the Clinchfield Portland Cement Corporation. The Master was directed to withhold this fund until the questions between these two claimants could be settled.

In the decree, it was also provided that the bonding company should be "vested with all rights of the respective claimants so paid by it, against the bankrupt estate of Powell Paving & Contracting Company, to the extent of the amount expended by it."

The decree also directed that the Master pay from the funds set apart to the creditors the sum of $2,000.00 to attorneys for the plaintiff for their services.

Each of the respective contenders here blames the other for the loss which has been occasioned through the failure of the bank. The bonding company says that it came about because of the injunction procured by the plaintiff; that, if the money had been turned over to it, there would have been no loss. The plaintiff claims that the bonding company is at fault since its appeal to this Court delayed a distribution of the funds, and if there had been no appeal, the money could have been withdrawn from the bank before it closed its doors. We are unable to find merit in either of these contentions. That the plaintiff had the right to apply for the injunction must be assumed, because the Court granted it, and there has been no revocation of that order. Neither can the bonding company be blamed for exercising its privilege of coming to this Court. If the bonding company is to be chargeable with the loss because of its appeal, the several other appellants in the former appeal would also be chargeable—and no one has even suggested that they are in any wise blamable.

The test, in our opinion, is as to the ownership of the funds at the time the decree was signed by the Circuit Judge—not at any time prior thereto, for, without doubt, the legal title to the money at the time of the commencement of the litigation was in the paving company, and there the title rested until the Court divested the paving company of that title. Then, the question is, Who owned the money when the title thereto was taken out of the paving company by the Court? The answer must be found in the language of the Master's report and Judge Wilson's decree.

The decree said the money was in the hands of the Master for distribution by the Court; the Master held the legal title thereto; it was held for the benefit of the parties to whom the Court should direct payment. The claim of the bonding company that the funds should be paid over to it was denied. The greatest right given to the bonding

company by the Master was to have the "funds  *   *   *
first applied to the claims" of the materialmen, and the
Master further held the bonding company only for "in-
sufficient funds to pay them [the materialmen] in full."
The decree required the bonding company, "in addition to
the fund on hand," to "pay unto the Master a sufficient
fund to pay all of said claims."

It is to be observed that the bonding company was not
held liable for any sums as fees to plaintiff's attorneys.
The materialmen were made liable for their own counsel
fees, and such fees were ordered paid by the Master from
the money in his hands.   If these fees were to be paid
by the materialmen out of their own money, the Court
must have regarded the money held by the Master as the
property of the materialmen.

The right given to the bonding company to file claims for
amounts paid out by it against the Trustee in Bankruptcy
of the paving company has some significance.   If all the
money in the banks had been lost, and the bonding com-
pany should now be required to pay all the claims of the
materialmen, and presented its claims to the Bankruptcy
Court for approval, we feel assured that that Court would
require credit on such claims to the amount paid over by
the paving company thereon when the money of the paving
company was held by the Court for the benefit of the mate-
rialmen.   Certainly, the Bankruptcy Court would not re-
quire the paving company to pay the claims of the material-
men more than once in full.

If the money in the Master's hands belonged to the bond-
ing company, then the amount reserved by the Court to
settle the claim in dispute, in which the bonding company
had absolutely no interest, is owned also by the bonding
company; and, if hereafter, while the contending claimants
are fighting over that sum, the sum shall be in some way
lost, can it then be rightfully required that the bonding

company make good that loss? We think not, but such result would clearly and logically follow if the bonding company is. now to be held for the loss already incurred.

If the money already paid by the bonding company to make up the deficit on the claims of the materialmen had been lost, or should hereafter be lost, while still in the hands of the Master, can it be rightfully contended that the bonding company should again pay to the Master that amount? An affirmative answer would have to be made if the Court should now hold the bonding company responsible for the loss already sustained.

If, after the decree of the Circuit Court became effective, the bonding company had paid in full all the claims of the materialmen and asked that the funds in the Master's hands be paid over to it, the Master could not have complied with that request without the written authority of the creditors so paid.

One of the tests of ownership of money or property is the right to dispose of it; the right to sell, convey, assign, or give away the same. Any one of the creditors ordered to be paid by the Master could have sold, assigned, or given away the amount held by the Master, payable to him. In the event of the death of a creditor, the amount due him would have been payable to his estate. The bonding company could not have assigned any of these funds; if it had become bankrupt, no part of the money would have passed to its trustee.

A judgment creditor of any of the materialmen could have levied under execution against the funds in the hands of the Master to the credit of that materialman on a judgment against him; no levy could have been made against these funds on any judgment against the bonding company.

Our last, and perhaps the most conclusive, illustration is this: If it had been ascertained that the funds on hand exceeded the total sum due the materialmen, and if there had been no loss, not a penny of the overplus would have been

paid to the bonding company; it was not entitled thereto. It would have gone to the paving company's trustee or its assignee. Had there been such an excess, and had it been lost, would the bonding company be liable therefor? The answer must be in the negative.

All through the report of the Master and the Circuit decree, there seem to run two main ideas: One, that the funds received from the city should go to the materialmen, and no one else; the other, if the funds were insufficient to pay the materialmen in full, then the bonding company must make good the deficit. The bonding company complied with the order of the Court; having done that, it should not be asked to do more.

It is the judgment of this Court that the order appealed from be, and the same is hereby, reversed.

Mr. Chief Justice Watts and Messrs. Justices Cothran and Carter concur.

Mr. Justice Stabler (dissenting): I think that the order of Judge Wilson in this proceeding should be affirmed. By reference to the opinion in the former appeal in this case reported in 139 S. C., 411; 138 S. E., 184, will be found the report of the Master and the Circuit decree. As this report was "made part and parcel" of the decree, resort should be had to both in determining what rights the decree sought to administer.

It is clear, as stated in the order of the Circuit Judge:

"That it was the expressed purpose of the decree * * * to enforce the liability of the American Surety Company under its bond, regardless of the funds upon which it had a claim to reimburse itself, and that the mere order that these funds be paid directly to the creditors, thus avoiding circuity of payment did not relieve the surety company from its obligation."

The liability of the surety company was the main question in the case, and its liability, as well as the rights of all

other parties to the suit, was determined and fixed by the judgment of the Court. The primary rights of the parties were not altered by the transfer of the funds in question from the City of Sumter to the Court. The surety company made no objection to the transfer, and it was done as an accommodation to the city. If any part of these funds was lost while in the hands of the Court, such loss was not properly chargeable against the materialmen, in clear derogation of their rights as fixed by the Court's decree.